**Slip Op. 06-172**

**United States Court of International Trade**

<table>
<tr><td>

MAGNOLA METALLURGY, INC.,

               Plaintiff,

        v.

UNITED STATES,

               Defendant,

U.S. MAGNESIUM LLC,

               Defendant-Intervenor.

</td><td>

Before: Pogue, Judge
Court No. 05-00617

</td></tr>
</table>

[Magnola's USCIT R. 56.2 motion for judgment on the agency record denied; judgment entered for the Defendant.]

Decided: November 20, 2006

Baker & Hostetler, LLP (Elliot Jay Feldman, John J. Burke) for Plaintiff.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Directory, Stephen Carl Tosini, Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice; and Office of Chief Counsel for Import Administration, Department of Commerce (Ada E. Bosque), of counsel, for Defendant.

King & Spalding, LLP (Stephen Andrew Jones, Jeffrey Mark Telep, Joseph W. Dorn) for Defendant-Intervenor US Magnesium LLC.


**OPINION**

**Pogue, Judge:** This is an action for judicial review of the decision of the Department of Commerce ("Commerce") in Pure Magnesium and Alloy Magnesium From Canada, 70 Fed. Reg. 54,367 (Dep't Commerce Sept. 14, 2005)(final results of 2003

countervailing duty administrative reviews)("2003 Final Results").

Plaintiff, Magnola Metallurgy, Inc. ("Magnola"), a Canadian producer of alloy magnesium, seeks to challenge Commerce's imposition of countervailing duties ("CVD") on its merchandise. More specifically, Magnola moves for judgment on the agency record pursuant to USCIT R. 56.2, asserting that Commerce's imposition of duties was based on an incorrect finding that the Gouvernement du Quebec's ("GDQ") manpower training program provided a de facto specific subsidy to Magnola because of the "disproportionately large" amount of funds Magnola received from the program.

For the reasons that follow, the court denies Magnola's motion and, in accordance with USCIT R 56.2(b), grants judgment for the Defendant.

### Background

Commerce imposed countervailing duties on pure and alloy magnesium from Canada in 1992. See Pure Magnesium and Alloy Magnesium from Canada, 57 Fed. Reg. 30,946, 30,948 (Dep't Commerce July 13, 1992) (final affirmative countervailing duty determinations) ("1992 CVD Determination"). About a decade later, Magnola, as a new shipper, sought and received, review of its U.S. sales of alloy magnesium during calendar year 2001. See Alloy Magnesium from Canada, 68 Fed. Reg. 4175 (Dep't Commerce Jan. 28, 2003) (preliminary results of countervailing duty new shipper review). In the final results of that new shipper review, Commerce

concluded that the GDQ's manpower training measure program ("MTM")

provided a de facto specific subsidy to Magnola, and reiterated its

finding from the preliminary determination that:

> Because the grants Magnola received were disproportionately
> large when compared to other companies, we . . . find them
> de facto specific on a company basis under section
> 771(5A)(D)(iii)(III) of the Act [19 U.S.C. § 1677
> (5A)(D)(iii)(III)]. In conducting our disproportionality
> analysis, for the years in which Magnola received grants, we
> calculated Magnola's share of total MTM grants on a
> percentage basis and compared Magnola's share to the
> percentage shares of all other MTM beneficiaries. In so
> doing, we found that Magnola received a disproportionate
> percentage of MTM benefits because, as the second largest
> recipient overall, its percentage share was nearly three
> times higher than the next highest recipient. Furthermore,
> Magnola's grant was greater than the grants received by 99
> percent of all the beneficiaries and over ninety times
> larger than the typical grant amount. Magnola's grant was
> vastly larger than the typical grant, regardless of whether
> we included or excluded small-scale recipients from our
> analysis. In other words, were we to exclude small-scale
> recipients, Magnola still received a disproportionately
> large amount of subsidy.

Memorandum from Susan H. Kuhbah, Acting Deputy Assistant Secretary

Group I Import Administration, to Joseph A. Spetrini, Acting

Assistant Secretary for Import Administration, Issues and Decision

Memorandum for the Final Results of the Countervailing Duty New

Shipper Review of Alloy Magnesium from Canada at 14, Dep't of

Commerce (April 21, 2003) available at http://ia.ita.doc.gov/

frn/summary/canada/ 03-10369-1.pdf; see also Final Results of Pure

Magnesium from Canada, 68 Fed. Reg. 22,359 (Dep't Commerce Apr. 28,

2003) (note of final results of countervailing duty new shipper

review) ("<u>New Shipper Review</u>").[1]

   Subsequently, pursuant to 19 U.S.C. § 1675(a), Magnola sought a "periodic" or "administrative" review[2] of the countervailing duty order for the 2003 calendar year.[3]  <u>See</u> <u>Pure Magnesium and Alloy Magnesium from Canada</u>, 70 Fed. Reg. 24,530, 24,530 (Dep't Commerce May 10, 2005) (preliminary results of countervailing duty administrative reviews) ("<u>2003 Preliminary Results</u>").

---

   [1] Commerce's determination, including the finding of a <u>de facto</u> specific subsidy to Magnola, was upheld upon appeal to a NAFTA panel.  <u>See</u> <u>Alloy Magnesium from Canada: Final Results of U.S. Department of Commerce Countervailing Duty New Shipper Review</u>, Secretariat File No. USA-CDA-2003-1904-02, Article 1904 binational panel review pursuant to NAFTA (Sept. 9, 2005) <u>available at</u> http://www.nafta-sec-alena.org/app/DocRepository/1/Dispute/englis h/NAFTA_Chapter_19/USA/Ua03020e.pdf.

   [2] All references to the U.S.C. are to the 2000 edition.

   [3] The purpose of periodic or administrative review is to provide an opportunity to make adjustments to the duties provided for in AD/CVD orders, based on actual experience.  "Unlike the systems of some other countries, the United States uses a 'retrospective' assessment system under which final liability for antidumping and countervailing duties is determined after merchandise is imported."  19 C.F.R. § 351.212 (2003).

   If Commerce finds that dumping or subsidization has occurred, and the ITC finds that dumping or subsidization causes, or threatens to cause, material injury to a domestic industry, interested parties may, each year, upon the anniversary of the original findings, request a [periodic] review to adjust the dumping or countervailing duty in light of the importers' actual then current conduct.

<u>Ontario Forest Indus. Ass'n v. United States</u>, 30 CIT __, __, 444 F. Supp. 2d 1309, 1311-12 (2006) (citing 19 U.S.C. § 1675).

In conducting the 2003 administrative review of Magnola's counntervailing duties, Commerce made the following determination:

> In the New Shipper Review, the Department found that the MTM program assistance received by Magnola, constituted countervailable benefits within the meaning of section 771(5) of the Act. The assistance is a direct transfer of funds from the [GDQ] bestowing a benefit in the amount of the grants. We also found Magnola received a disproportionately large share of assistance under the MTM program and, on this basis, we found the grants to be limited to a specific enterprise or industry, or group of enterprises or industries, within the meaning of section 771(5A)(D)(iv) of the Act.

2003 Preliminary Results, 70 Fed. Reg. at 24,532.

> It is the Department's policy not to revisit specificity determinations absent the presentation of new facts or evidence (see, e.g., Pure and Alloy Magnesium From Canada: Final Results of the First (1992) Countervailing Duty Administrative Reviews, 62 FR 13857 (March 24, 1997); Carbon Steel Wire Rod From Saudi Arabia; Final Results of Countervailing Duty Administrative Review and Revocation of Countervailing Duty Order, 59 FR 58814 (November 15, 1994)). In this review, no new facts or evidence has [sic] been presented which would lead us to question that determination.

> In proposing that the Department base a POR-specific de facto specificity finding on the amounts of benefits from non-recurring grants allocated to the POR, the respondent appears to be confusing the initial specificity determination based on the action of the granting authority and other circumstances at the time of bestowal with the allocation of the benefit over time. These are two separate issues. We agree with the petitioner that once a determination has been made regarding whether a non-recurring subsidy was specific (or not) at the time of bestowal, then that finding holds for the duration of the subsidy benefit barring any new facts or evidence pertaining to the circumstances of the subsidy's bestowal. In the original determination, we considered each of the

claims raised by Magnola; the bases of the original specificity determination are still valid. Since no new evidence has been presented which would cause us to revisit the original specificity determination, we continue to find assistance under the MTM Program to be specific and, therefore, countervailable.

Memorandum from Barbara E. Tillman, Acting Deputy Assistant Secretary for Import Administration, to Joseph A. Spetrini, Acting Assistant Secretary for Import Administration, Issues and Decisiom Memorandum for the Final Results of the 2003 Administrative Reviews for the Countervailing Duty Orders of Pure Magnesium and Alloy Magnesium from Canada, at 14, Dep't of Commerce (Sept. 7, 2005) available at http://ia.ita.doc.gov/frn/summary/canada/E5-5018-1.pdf ("Sept. 7, 2005 Issues & Decision Mem."); see also 2003 Final Results, 70 Fed. Reg. at 54,367.[4]

In the action presently before the court, Magnola, as is its right, seeks judicial review, under 19 U.S.C. § 1516a(a)(2)(B)(iii), of the 2003 Final Results. In such an action, the party seeking review of an agency determination may contest "any factual findings or legal conclusions upon which the

---

[4] In the 2003 Final Results, Commerce adopted the Issues and Decision Memorandum, thereby incorporating it into its final determination: "All issues raised in the case and rebuttal briefs by parties to these administrative reviews are addressed in the September 7, 2005, Issues and Decision Memorandum for the 2003 Countervailing Duty Administrative Reviews of Pure Magnesium and Alloy Magnesium from Canada ("Decision Memorandum") to Joseph Spetrini, Acting Assistant Secretary for Import Administration, which is hereby adopted by this notice." 2003 Final Results, 70 Fed. Reg. at 54,367.

determination is based," 19 U.S.C. § 1516a(a)(2)(A), and "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B).

The court has jurisdiction under 28 U.S.C. § 1581(c).

**DISCUSSION**

The statute governing Commerce's administrative reviews provides, in relevant part, as follows:

> Administrative review of determinations
> (a) Periodic review of amount of duty
> (1) In general
>     At least once during each 12-month period beginning on
> the anniversary of the date of publication of a countervailing duty order under this subtitle or under section 1303 of this title, an antidumping duty order under this subtitle or a finding under the Antidumping Act, 1921, or a notice of the suspension of an investigation, the administering authority, if a request for such a review has been received and after publication of notice of such review in the Federal Register, shall--
>       (A) review and determine the amount of any net
>       countervailable subsidy . . . .

19 U.S.C. § 1675. Thus the statute requires that Commerce, upon request, conduct an administrative review and determine the amount of Magnola's subsidy. The statute does not, however, specify the precise process and scope of the proceedings necessary to determine the amount of Magnola's subsidy. However, as Congress has

authorized agencies to do, Commerce filled the gap in the statute by promulgating regulations that outline the procedures required in an administrative review. See 5 U.S.C. § 301;[5] 19 CFR Part 351: Countervailing Duties (notice of proposed rulemaking and request for public comments) 62 Fed. Reg. 8818 (Dep't Commerce Feb. 26, 1997).

In relevant part, Subpart B of Commerce's Regulations governing Antidumping and Countervailing Duty Procedures provides that: "[t]he procedures for reviews are similar to those followed in investigations." 19 C.F.R. § 351.221(a).[6] With exceptions not applicable here, however, the regulations do not further specify the scope of the proceedings in the administrative review. Accordingly, in the proceeding at issue here, Commerce was required to interpret its own regulation in deciding the scope of the particular administrative review at issue.

In Magnola's 2003 Countervailing Duty Administrative Review,

---

[5]This provision reads:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

5 U.S.C. § 301.

[6]All references to the Code of Federal Regulations are to the 2003 edition.

Commerce determined the scope of the review by relying on "the Department's policy not to revisit specificity determinations absent the presentation of new facts or evidence." Sept. 7, 2005 Issues & Decision Mem. at 14. More specifically, Commerce implicitly interpreted its own regulation governing the review, 19 C.F.R. § 351.221, as not requiring Commerce to reopen the specificity determination absent the presentation of new facts or evidence.[7]

Defendant is therefore correct that the issue presented in this action is:

> [w]hether Commerce may decline to reopen the record of a closed new shipper review during a subsequent administrative review, to revisit a countervailability determination for a nonrecurring subsidy, that was addressed during the new shipper review and subsequently sustained by a North American Free Trade Agreement ("NAFTA") binational panel.

Def.'s Resp. Magnola's Mot. J. Admin. R. 2 ("Def.'s Resp.").

Accordingly, the court must determine whether the agency's interpretation of its regulation to permit it to refrain from re-opening a specificity determination in a prior review, absent new evidence, is in accordance with law.

As a general matter, courts will find an agency's

---

[7] Magnola does not claim that its submission relied on any new facts or evidence. See Sept 7, 2005 Issues & Decision Mem. at 14 ("In this review, no new facts or evidence has [sic] been presented which would lead us to question that determination"); Br. Supp. Magnola Metallurgy Inc.'s Mot. J. Agency. R. 33-34 ("Pl.'s Br.") (failing to contest the assertion that no new facts had been presented during the review).

interpretation of its own regulations to accord with law unless that interpretation is unreasonable. Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 150 (1991)("[i]t is well established 'that an agency's construction of its own regulations is entitled to substantial deference.'")(quoting Lyng v. Payne, 476 U.S. 926, 939 (1986)); Dofasco Inc. v. United States, 28 CIT __, __, 326 F. Supp. 2d 1340, 1350-51 (2004); see also Mittal Canada, Inc. v. United States, 30 CIT __, __, Slip Op. 06-143 at 16-17 (Sept. 22, 2006) (discussing the factors "affecting deference to agencies' regulatory interpretations"). Here, the court cannot conclude that the agency's policy resulting from Commerce's interpretation of its regulation is unreasonable.

First, in the absence of new facts or evidence, there is no reason for the court to believe that the agency's prior determination, which was itself subject to appeal, would be inconsistent with the statutory objective of achieving accuracy in the calculation of antidumping and countervailing duty rates. Second, the agency's policy serves the interest of efficiently using the agency's resources. Cf. Barnhart v. Thomas, 540 U.S. 20, 28-29 (2003) (describing the size of the Social Security system and stating that "[t]he need for efficiency is self-evident")(quoting Heckler v. Campbell, 461 US 458, 461, n.2 (1983); see also Torrington Co. v. United States, 68 F. 3d 1347, 1351 (Fed. Cir. 1995) ("agencies with statutory enforcement responsibilities enjoy

broad discretion in allocating investigative and enforcement resources"); <u>Alberta Pork Producers' Mktg. Bd. v. United States</u>, 11 CIT 563 (1987). Third, the regulation specifically provides that <u>in a specified other review</u> the agency will, without requiring the submission of new evidence, affirmatively investigate changes in the subsidy programs made by the government of the affected country that affected the estimated countervailable subsidy. <u>See</u>, 19 C.F.R. § 351.221(c)(7).[8] This language would be unnecessary if the

---

[8] That provision provides as follows:

(7) Countervailing duty review at the direction of the President. In a countervailing duty review at the direction of the President under section 762 of the Act and § 351.220, the Secretary will:

(i) Include in the notice of initiation of the review a description of the merchandise, the period under review, and a summary of the available information which, if accurate, would support the imposition of countervailing duties;

(ii) Notify the Commission of the initiation of the review and the preliminary results of review;

(iii) Include in the preliminary results of review the countervailable subsidy, if any, during the period of review and a description of official changes in the subsidy programs made by the government of the affected country that affect the estimated countervailable subsidy; and

(iv) Include in the final results of review the countervailable subsidy, if any, during the period of review and a description of official changes in the subsidy programs, made by the government of the affected country not later than the date of publication of the notice of preliminary results, that affect the estimated

(continued...)

agency were mandated to investigate such potential changes, absent the submission of new facts or evidence, in every review. The agency's policy is therefore consistent with commonly accepted canons of interpretation. See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (The "cardinal principle of statutory construction" is that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant.") (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001); see also Hamdan v. Rumsfeld 126 S. Ct. 2749, 2765 (2006) ("A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute.").

In addition, "the ITA has a longstanding administrative practice of not reinvestigating a program determined not to be countervailable unless the petitioner presents new evidence justifying reconsideration of a prior finding." PPG Indus., Inc. v. United States, 978 F.2d 1232, 1242 (Fed. Cir. 1992). That practice has been upheld as reasonable by the Court of Appeals for the Federal Circuit. Id. Because PPG Industries addresses programs determined not to be countervailable, it does not mandate

---

[8](...continued)
      countervailable subsidy.

19 C.F.R. § 351.221(c)(7)

approval of a rule against the reinvestigation of a program determined to be countervailable in the absence of new evidence; PPG Industries does, however, give support to the conclusion that such a reciprocal or inverse rule is reasonable, that is, that a finding of a de facto specific countervailable subsidy holds absent the presentation of new evidence.

In the face of this authority, Magnola argues that its request for review of the 2003 Final Results does not constitute a request to reopen the New Shipper Review determination. Rather, Magnola claims, Commerce itself made a determination of countervailability in the 2003 Final Results by relying on the determination from the New Shipper Review. Magnola's argument, however, is unpersuasive. See Reply Br. Supp. Magnola Metallurgy Inc.'s Mot. J. Agency R. 4 ("Pl.'s Reply Br.")("Commerce made a determination of countervailability, including a finding of de facto specificity, in the 2003 administrative review.").

It is well-established law that the court reviewing an agency decision "must judge the propriety of such [agency] action solely by the grounds invoked by the agency." SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). Accordingly, Chenery requires that the agency's stated finding or legal conclusion is that which we must review. Here, as noted above, the agency's specific finding or legal conclusion, as a result of its regulations and interpretation of its regulations, was that it is "the Department's policy not to

revisit specificity determinations absent the presentation of new facts or evidence." Sept. 7, 2005 Issues & Decision Mem., at 14. When faced with no new evidence, Commerce was reasonable in finding that it would not review a specificity determination that it had previously made, and that had been reviewed and affirmed by a NAFTA panel. The statute upon which Plaintiff sues provides the same direction. See 19 U.S.C. § 1516a(a)(2)(A)(review of determination available within thirty days of publication of countervailing duty order). Magnola cites no authority directing the court to do otherwise.

In the absence of new evidence that would upset or change the specificity determination, Magnola avers that Commerce's specificity determination during the period of review in question is unsupported by substantial evidence and not in accordance with law.[9] Pl.'s Reply Br. 14. Magnola claims that Commerce must conduct a separate disproportionality analysis for the period of

---

[9]Though a change in facts warrants a reconsideration of a specificity determination, see Al Tech Specialty Corp. v. United States, 28 CIT __,__ Slip Op. 04-114 at 57 (Sept. 8, 2004) ("remand of repayment issue necessarily reopens the question of whether [the program] conferred a subsidy" therefore "Commerce will have the opportunity to reconsider its specificity determination, in light of its redetermination on the repayment issue . . . ."), a change in law could also necessitate such reconsideration, cf. AG der Dillinger Huttenwerke v. United States, 26 CIT 1091, 1103 (2002) ("Commerce was obligated to address whether the change in law cited by the German Producers has any impact on those programs."). Here, the Plaintiff is also not alleging any change in law that would give rise to a revisitation of the specificity determination.

review. Id.  Magnola argues that 19 U.S.C. § 1677(5A)(D)(iii)[10] requires that the longevity of the MTM be considered, and by implication requires a separate finding of disproportionality for each period.  Id.  While it is true that this provision does require the length of a program to be taken into account while considering de facto specificity, the means by which it is to be evaluated is left ambiguous, through the use of the phrase "taken into account."  As such, Commerce's choice to make an initial specificity determination, at the bestowal of the grant, that considers and evaluates various factors with respect to whether or not a grant is specific, is a reasonable interpretation of how

---

[10]This provision reads:

Where there are reasons to believe that a subsidy may be specific as a matter of fact, the subsidy is specific if one or more of the following factors exist:
    (I) The actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number.
    (II) An enterprise or industry is a predominant user of the subsidy.
    (III) An enterprise or industry receives a disproportionately large amount of the subsidy.
    (IV) The manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others.
    In evaluating the factors set forth in subclauses (I), (II), (III), and (IV), the administering authority shall take into account the extent of diversification of economic activities within the jurisdiction of the authority providing the subsidy, and the length of time during which the subsidy program has been in operation.

19 U.S.C. § 1677(5A)(D)(iii).

Commerce should take the length of a program into account.

Furthermore, Commerce has determined that the best way to allocate the benefits of a countervailable subsidy is to do so over time. See Sept. 7, 2005 Issues & Decision Mem., at 14 ("respondent appears to be confusing the initial specificity determination based on the action of the granting authority and other circumstances at the time of bestowal with the allocation of the benefit over time"). In so doing, Commerce is exercising its discretion as to how to calculate specificity for each period of review, in the absence of a specific statutory mandate. It is not the job of the court to upset a determination made based on Commerce's reasonable exercise of its discretion. To the extent that Magnola is arguing that Commerce's allocation methodology is unreasonable, Magnola has not demonstrated a legal basis for re-opening the determination.

**Conclusion**

Accordingly, the court concludes that it was appropriate for Commerce, in the administrative review at issue here, to decline to reopen the record of a closed new shipper review, in order to revisit a countervailability determination for a nonrecurring subsidy that was addressed during the new shipper review and subsequently sustained by a North American Free Trade Agreement

("NAFTA") binational panel.  Magnola's motion is therefore denied, and judgment is entered for the defendant.


        SO ORDERED.


Dated: November 20, 2006
       New York, N.Y.


                                      /s/ Donald C. Pogue
                                    Donald C. Pogue, Judge